**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Severo D. ESPINOSA, Federico C. Atucha, Antonio Niebla Martin, Mario Hernandez, Amado F. Larrazleta, Leovigildo Nunez, Crecencio J. Denis, Leonardo O. Carralero, Luis Santa Cruz, and Terry Lynn Foreman, Defendants-Appellants.**

**Nos. 83–2001 to 83–2009 and 83–2027.**

United States Court of Appeals,
Tenth Circuit.

Aug. 26, 1985.

Rodney W. Bryson of Bryson & Berman, Miami, Fla., for defendant-appellant Amado F. Larrazleta.

Tova Indritz, Federal Public Defender, (Don Klein, Jr., Asst. Federal Public Defender, on brief), Albuquerque, N.M., for defendant-appellant Terry Lynn Foreman.

Richard M. Gale, Miami, Fla., for defendant-appellant Mario Hernandez.

Paul J. Kennedy, Albuquerque, N.M. (Stuart R. Mishkin, of Mishkin & Golembe, Miami, Fla., was also on brief), for defendant-appellant Luis Santa Cruz.

Bill Clay, Miami, Fla., for defendants-appellants Severo D. Espinosa and Federico C. Atucha.

Dennis N. Urbano, Coral Gables, Fla., for defendants-appellants Crecencio J. Denis and Leonardo O. Carralero.

Carl L. Masztal, Miami, Fla., for defendant-appellant Leovigildo Nunez.

Gerald D. Hubbart, Miami, Fla., for defendant-appellant Antonio Niebla Martin.

David N. Williams, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., Don J. Svet and Larry Gomez, Asst. U.S. Attys., Albuquerque, N.M., with him on brief), Albuquerque, N.M., for plaintiff-appellee U.S. of America.

Before HOLLOWAY, Chief Judge, BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Chief Judge.

This is a timely consolidated appeal brought by ten defendants who were convicted after a jury trial on two counts of an indictment charging possession of marijuana with intent to distribute and conspiracy to distribute, in violation of 21 U.S.C. §§ 841(a), 846, and 18 U.S.C. § 2.[1] The defendants were all sentenced to fifteen years' imprisonment.

The defendants present the following issues on appeal: (1) whether sufficient evidence was presented to support each defendant's conviction on both counts of the indictment; (2) whether the trial court violated defendants' Sixth Amendment right to confrontation in refusing to grant a mistrial or severance after certain comments were made by defendant Foreman in his opening statement; (3) whether comments made by the prosecutor in closing argument amounted to prosecutorial misconduct and were so prejudicial as to deprive defendants of a fair trial; (4) whether the trial court erred in failing to impose individualized sentences for each defendant; (5) whether the trial court erred in the conduct of the voir dire; (6) whether the trial court erred in admitting Exhibit 77 into evidence; (7) whether the trial court erred in denying various defendants' motions to suppress evidence obtained from the searches incident to their arrests; (8) whether the trial court erred in denying defendant Foreman's motion for a severance; (9) whether defendant

---

1. The pertinent code sections provide as follows:
 21 U.S.C. § 841(a):
 [I]t shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....
 21 U.S.C. § 846:
 Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

 18 U.S.C. § 2:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 The indictment alleged a violation of 18 U.S.C. § 2 only in connection with Count II, the charge of possession with intent to distribute.

Foreman was denied his Sixth Amendment right to effective assistance of counsel; and (10) whether the trial court erred in refusing to correct before the jury the alleged misidentification of defendant Denis by a government witness. We affirm.

## I.

### THE FACTUAL BACKGROUND

This case involves many defendants and a voluminous set of facts. We will therefore briefly summarize the pertinent facts to present an overview of the case. Further factual details will be discussed later for analysis of the various issues.

On the night of March 27, 1983, United States Customs officials tracked a DC-6 airplane, which was not on a flight plan and did not clear customs, to the vicinity of Corona, New Mexico. Surveillance was continued until the aircraft landed on the Austin ranch, located in a sparsely populated area of New Mexico, at approximately 12:45 a.m. (Tr. 157, 172). The officers observed from the air that a landing strip was lit with flares two or three minutes before the plane landed. (Tr. 149). Officers also observed that approximately six vehicles approached the plane as it landed and left the area around 45 minutes later at a high rate of speed. (Tr. 175, 178, 196–97).

New Mexico state police were notified to assist and they converged on the area at approximately 12:30 a.m. to meet vehicles leaving the aircraft. (Tr. 240–43, 309–11). The officers first spotted a Ford Bronco or International heading north towards them without lights; upon nearing their station, this vehicle quickly turned around and sped south (Tr. 243–44, 311–12). While pursuing this vehicle, Officers Bibiano and Ness came upon an abandoned Omega pointed north approximately one mile down the road; at that time, they arrested defendants Espinosa and Atucha whom they observed jumping a fence and running from the car. (Tr. 244–45, 247).

Officer Mahannah continued south past officers Bibiano and Ness in pursuit of the original vehicle. He passed an eighteen-wheeler trailer-truck parked on the side of the road with its doors open and motor still running. (Tr. 313, 404). A fuel tank and pump were later discovered in this truck, pumping aviation fuel onto the ground. (Tr. 404–05). Approximately three or four miles further south, he came upon an abandoned North American Van Lines truck parked in the center of a ninety degree turn in the road. (Tr. 313–14). This truck was later found to contain approximately 20,000 pounds of marijuana. (Tr. 1345–47). While Officer Mahannah was examining this van, defendant Foreman drove up in a Jeep Cherokee and stopped 15 feet behind the van; Foreman was arrested at that time. (Tr. 315–16).

The police next found a Ford pick-up and GMC Suburban parked in the center of the road approximately four and one-half miles from the marijuana truck. Defendants Larrazleta and Martin were standing nearby and were immediately arrested. (Tr. 318–20, 425–27). Two rolls of film were seized from the GMC Suburban. (Tr. 216). This film, when developed, depicted defendant Santa Cruz in a hotel room and several of the defendants building a shed on land located approximately 35 miles from the Austin ranch. (Government's Exhibit 23; Tr. 1022–26). This land had been quickly purchased on March 16, 1983 by a named defendant (Vallina) and a man using the name "Virgilio Morales."

In the early morning hours, officers also found a Ford Bronco, which had apparently been abandoned for some time, "high centered" in the road approximately one mile from the marijuana truck and three and one-half miles from the aircraft. (Tr. 253–54, 806). This vehicle had been rented in Albuquerque by defendant Hernandez or by defendant Denis using identification in the name of Hernandez. (Tr. 1115–17). Hernandez had the keys to this car in his possession when arrested. (Tr. 1288).

On March 28, 1983, around 6:30 a.m., defendants Hernandez and Nunez were arrested upon being stopped at a roadblock approximately 20 miles from the Austin ranch. (Tr. 631–39, 663–65). They had

been picked up hitchhiking earlier that morning by a state highway employee approximately ten miles south of Willard, New Mexico. (Tr. 391–94). They were arrested after presenting identification and giving unsatisfactory explanations for their presence in the area.

In the early afternoon of March 28, 1983, defendants Carralero and Denis were discovered at the ranch of James Hansen located eight or nine miles from the Austin ranch; they arrived at the ranch asking for water, money and a ride to Albuquerque. (Tr. 386–88). At 3:00 p.m., police officers responding to a call from Hansen picked up the men two miles from the highway. (Tr. 648–49). They were placed under arrest after an unsuccessful attempt was made to locate their vehicle which they claimed had broken down. (Tr. 670–72).

On March 29, 1983, defendant Santa Cruz was arrested at a Quality Inn Motel in Albuquerque when police responded to a call that some Cubans had registered at another adjacent motel. Police decided to question Santa Cruz upon observing him attempt to hide his face. (Tr. 838). He was arrested after it was discovered he had not slept in his room, he appeared dusty with scratches on his arms, and he held a one-way bus ticket from Moriarty, New Mexico to Albuquerque. (Tr. 839–40, 844–49).

## II

### THE SUFFICIENCY OF THE EVIDENCE

All defendants except Martin contend on appeal that the evidence presented at trial was insufficient to support their individual convictions for conspiracy to distribute and for possession of marijuana.

In reviewing the evidence, "we must view the entire record 'in the light most favorable to the Government in order to determine whether the evidence, both direct and circumstantial, together with all reasonable inferences to be drawn therefrom, is substantial enough to establish guilt beyond a reasonable doubt.'" *United States v. Petersen*, 611 F.2d 1313, 1317 (10th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2986, 64 L.Ed.2d 854 (1980) (quoting *United States v. Hubbard*, 603 F.2d 137, 142 (10th Cir.1979)); *see also United States v. Dickey*, 736 F.2d 571, 583 (10th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). As an appellate court, we are bound by the rule that the resolution of conflicting evidence and the assessment of the credibility of witnesses is within the sole discretion of the jury as the trier of fact. *United States v. Petersen*, 611 F.2d at 1317; *United States v. Hubbard*, 603 F.2d at 142–43.

### A. Conspiracy [2]

Defendants first argue that there was insufficient evidence to sustain their convictions for conspiracy. In conspiracy cases brought under 21 U.S.C. § 846, the government is required to prove that two or more persons agreed to commit an offense under the Controlled Substances Act. *United States v. Knowles*, 572 F.2d 267, 269 (10th Cir.1978). Defendants may not be convicted of a conspiracy charge without proof that they had knowledge of and participated in the conspiracy. *United States v. McMahon*, 562 F.2d 1192, 1196 (10th Cir.1977). We must be mindful in assessing whether sufficient evidence was

---

**2.** The evidence presented to justify defendants' conspiracy convictions will also serve to answer whether defendants aided and abetted the commission of the crimes charged. To be guilty as an aider and abettor, the defendant must associate himself with the venture, participate in it as something he wishes to bring about, and seek by his action to make it succeed. *United States v. McMahon*, 562 F.2d 1192, 1195 (10th Cir.1977). "For the most part the evidence which connects the defendants to the conspiracy also supports a finding that they aided and abetted others in

possession." *United States v. Butler*, 611 F.2d 1066, 1073 (5th Cir.), *cert. denied*, 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980) (citing *United States v. Soto*, 591 F.2d 1091, 1103 (5th Cir.), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979)); *see also United States v. McMahon*, 562 F.2d at 1196 (insufficient evidence to support the conspiracy conviction because "deficiencies in the Government's case on the substantive counts [of the commission of the offense or aiding and abetting its commission] applies to the conspiracy charge as well").

presented to show agreement, knowledge and participation, that "guilt is individual and personal, even as regards conspiracies, and is not a matter of mass application." *United States v. Watson*, 594 F.2d 1330, 1337 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979); *see also United States v. Dickey*, 736 F.2d at 583.

We are convinced that there was sufficient independent evidence to establish the existence of a conspiracy. It is undisputed that a plane, which was not on a flight plan and did not clear customs, was tracked to a secluded New Mexico ranch in the early morning hours of March 28, 1983. Customs officials observed that the plane landed on a makeshift airstrip, that a group of vehicles approached the plane, and that they left 45 minutes later at a high rate of speed. (Tr. 149–50, 174–80, 195–98). Approximately 20,000 pounds of marijuana was found soon thereafter in an abandoned truck as police officers sought to apprehend the exiting vehicles. Viewing the evidence in the light most favorable to the government, the jury could reasonably infer that the plane delivered the marijuana and that a group of people under cover of darkness unloaded the cargo and then quickly attempted to leave the area. The jury could thus infer that the participants in this operation were parties to a common planned scheme.[3] We now turn to examine each defendant's arguments, noting at the outset that it is true that no trace of marijuana or marijuana odor was discovered on each defendant's arrest.

(1) **Amado Larrazleta:** Larrazleta contends that the evidence at best established he was present in the vicinity of the marijuana when arrested and that he associated with some of the co-defendants; he argues that this was insufficient to support his conspiracy conviction. Appellant's Individual Opening Brief 22. We agree that evidence of mere presence at the scene of the crime or association with co-defendants is not enough to support a conspiracy conviction. *United States v. Dickey*, 736 F.2d at 585.

Evidence was presented that Larrazleta had on prior occasions visited the ranch where the plane landed (Tr. 548, 771–72); other evidence also showed that the ranch may have been purchased as part of the scheme to serve as a secluded landing strip for the plane carrying contraband.[4] From this, the jury could reasonably infer that Larrazleta was more than merely present in that area on the night of March 27, 1983. The jury could choose to disregard Larrazleta's explanation that he had been kidnapped at gunpoint and forced to work on the ranch. (Tr. 432). In addition, evidence was introduced supporting the inferences that Larrazleta participated in ensuring the delivery of a truck and fuel tank to the ranch for use in the marijuana operation, that he had knowledge of various items used in the scheme, and that he was involved in the operation the night the plane landed.[5] For these reasons, we conclude

---

3. This case is similar to *United States v. Watkins*, 662 F.2d 1090 (4th Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1613, 71 L.Ed.2d 849 (1982), where the court held that sufficient evidence was presented to establish a conspiracy. In that case, the government proved conspiracy by showing eleven tons of marijuana had been delivered by boat; that a crew of eight unloaded the cargo under cover of darkness; and that the participants exited the property. On the basis of this evidence, the court concluded that "[s]ome, if not all, of the participants who were on the [boat], on shore unloading the obviously illegal cargo and transferring it to the van and truck and driving away, were of necessity parties to a common planned operation." *Id.* at 1097.

4. Fred Austin testified that three men purchased this ranch from him in November 1982 (Tr. 541–44); he stated that one of the buyers was a named defendant in this case (Government's Exhibit 76; Tr. 543). Austin also testified that, after the ranch was purchased and prior to March 27, 1983, he saw at the ranch the pick-up seized upon the arrests of defendants Larrazleta and Martin and the trailer-truck found abandoned and pumping fuel near the landing site (Tr. 545–46).

5. Specifically, a witness identified Larrazleta as one who helped to load hay into an eighteen-wheeler trailer-truck containing a fuel tank and pump in Shreveport, Louisiana soon after it was purchased there by a co-defendant. (Tr. 762–

that sufficient evidence was presented to sustain Larrazleta's conviction on the conspiracy count.

■ (2) **Antonio Martin:** While Martin did not assert a sufficiency of the evidence argument in his briefs on appeal, we note that the record contained evidence sufficient to connect him to the conspiracy. He was identified in photographs with other co-defendants constructing a shed that the jury could reasonably infer was to be utilized in the scheme (Tr. 1022–26). Other evidence supported the inference that he was involved in the operations about the time the plane landed.[6] The jury could choose to disbelieve Martin's explanation for his presence in the area—that he had been out with a girlfriend and was working on a nearby ranch. (Tr. 1285). We therefore conclude that the evidence was sufficient to uphold Martin's conspiracy conviction.

■ (3) **Severo Espinosa and Federico Atucha:** Both Espinosa and Atucha contend that at best the evidence established they associated with co-defendants and were present and found fleeing in the vicinity of the crime when arrested; they assert that such evidence is insufficient to sustain their conspiracy convictions. Appellants' Individual Opening Brief 4–5. We agree that evidence of mere association or presence, even when coupled with evidence of flight, is not enough to support a conspiracy conviction. Nevertheless, a jury need not ignore the fact of "presence" or "flight" when presented in conjunction with other evidence of guilt. *United States v. Pintado*, 715 F.2d 1501, 1504 (11th Cir.1983) (citing *United States v. Blasco*, 702 F.2d 1315 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 275, 276, 78 L.Ed.2d 256 (1983) (presence)); *United States v. Smith*, 700 F.2d 627, 633 (11th Cir.1983) (presence and flight). Here such other evidence was presented to sufficiently support both Espinosa's and Atucha's convictions.

■ Two airline tickets in the name of "P. Espinosa" were found in the truck containing approximately 20,000 pounds of contraband. (Tr. 894, 898–99). A false bill of lading in the name of "Spinoso", indicating that the truck was destined for New Jersey, was also seized from the marijuana truck. (Government's Exhibit 33; Tr. 895). Espinosa had chauffeur's licenses (one

---

63); Clyde LeGrand, who was hired to drive the truck from Louisiana to Albuquerque, New Mexico, testified that he delivered the truck to Larrazleta and was taken by him to the Austin ranch upon his arrival in New Mexico (Tr. 771–72); the same truck was found abandoned on the night of March 27, 1983, in the vicinity of the landing site with its motor running, doors open, and containing a fuel tank which was pumping aviation fuel onto the ground (Tr. 404–17). Larrazleta's fingerprints were also lifted from the Jeep Cherokee seized on the arrest of defendant Foreman (Tr. 1155, 1167–68); this vehicle contained flares (Tr. 876), a CB radio (Tr. 876–77), the cover to a ground-to-air radio found nearby on the side of the road (Tr. 256, 300–02), and a microphone that could be used as a component of the ground-to-air radio system (Tr. 877, 1018–19). The following evidence was also obtained from the pickup and car seized upon the arrests of defendants Larrazleta and Martin: film that when developed depicted some of the defendants constructing a shed on land purchased approximately 30 miles from the landing site (Government's Exhibit 23–A, B; Tr. 216, 1022–26, 1071–72); electrical wiring for a CB radio (Tr. 884–85); a sectional ladder (Tr. 883); and sales literature on a Honda 4000

generator, similar to the one discovered pumping aviation fuel from the trailer-truck (Government's Exhibit 50–N, O; Tr. 1045).

6. Martin, like co-defendant Larrazleta, was arrested on the night of March 27, 1983, near vehicles containing materials a jury could infer were used in the marijuana operation. *See supra* note 5. Martin was also identified in pictures wearing a Redman Chewing Tobacco hat (Tr. 1022–23); a similar hat was later discovered in a motel room where various defendants were registered and which contained building materials, flares and filters for diesel engines (Tr. 837, 852–53). The jury could reasonably infer from this evidence that Martin was connected to the conspiracy which included construction of a storage shed for the marijuana, the use of flares to light up the makeshift airstrip, and the use of filters for the truck found abandoned and pumping aviation fuel near the scene of the crime. The inference could be drawn about the use of the filters because Le Grand had previously testified that, when he drove the trailer-truck from Louisiana to New Mexico, the truck was "running real bad" and needed new fuel filters. (Tr. 766). *See also* Tr. 769, 776, 852 and Government's Exhibit 71.

from New Jersey) and was thus qualified to drive the vehicle. (Government's Exhibits 60 and 62). In addition, the signature of "Federico Atucha" was discovered in one of the logbooks seized from the marijuana truck. (Government's Exhibit 33; Tr. 895, 897). Atucha also had a chauffeur's license which qualified him to drive the truck. (Government's Exhibit 59). From all the evidence, the jury could reasonably infer that Espinosa and Atucha participated in the illegal scheme. Viewed in conjunction with evidence of their association with co-defendants[7] and presence and attempted flight from officials at the scene of the crime, the evidence was sufficient to sustain Espinosa's and Atucha's conspiracy convictions.

■ (4) **Terry Lynn Foreman:** Foreman contends that the only evidence presented to connect him to the conspiracy was his presence near the marijuana truck on March 27, 1983. He further argues that the items seized from the Jeep Cherokee he was driving when arrested were insufficient to convict him because no additional evidence was offered to show he owned the vehicle or that he was aware of the contraband or the items found in the vehicle. Appellant's Brief-in-Chief 46–49. We disagree.

The Jeep Cherokee contained equipment which the jury could reasonably infer was used in the marijuana operation.[8] Foreman asserts that discovery of these items was consistent with his defense that he was an "unsuspecting pawn" or "employed truck driver" because they were found in the rear of the vehicle out of his reach and sight. However, the evidence obtained from the vehicle must be viewed in conjunction with the fact that approximately 20,000 pounds of marijuana had been unloaded from a plane in an isolated area during the early morning hours and with other evidence of "association."[9] Viewing the evidence as a whole, the jury could reasonably infer that Foreman as driver of the Jeep Cherokee was not an "unsuspecting pawn," that he was aware of the equipment in the vehicle, and that he was an active participant in the scheme.[10] Accordingly, we conclude that sufficient evidence was presented to sustain Foreman's conspiracy conviction.

■ (5) **Crecencio Denis and Leonardo Carralero:** Denis and Carralero argue that the only evidence offered against them was "doubtful testimony" that they smelled of aviation fuel when arrested and that they were found at a ranch located approximately eight miles from the Austin

---

7. More evidence was presented on Espinosa's association with co-defendants than Atucha's association with co-defendants. This evidence established that on two different occasions Espinosa registered at the same time and in the same motel as a co-defendant (Tr. 1218–20, 1243–44). On one of these occasions, the co-defendant registered in the motel with a number of people in his party and was seen with a truck similar to the one found abandoned and pumping aviation fuel at the scene of the crime. (Tr. 1244–47). Co-defendant Larrazleta's ID tag was also found in the Omega seized upon the arrests of Espinosa and Atucha. (Tr. 1011, 1017).

8. *See supra* note 5.

9. Foreman's fingerprints were lifted from the GMC suburban seized upon the arrests of co-defendants Larrazleta and Martin. (Tr. 1156, 1169–70). Larrazleta's prints were also found in the vehicle Foreman was driving. (Tr. 1155, 1167–68).

10. Foreman's case is distinguishable from *United States v. Castillo*, 524 F.2d 286 (10th Cir.1975)

(per curiam), and *United States v. Littrell*, 574 F.2d 828 (5th Cir.1978). In those cases, it was held that there was insufficient evidence to connect the driver of a vehicle containing contraband to a conspiracy. However, in *Castillo*, the defendant driver was employed by a commercial enterprise engaged in the business of transporting persons and their belongings and had nothing to do with the loading of the van or trailer containing the contraband (*Castillo*, 524 F.2d at 287); in *Littrell*, no other evidence was presented to show that the driver knew of the contraband or that it was the subject of a deal between buyer and seller (*Littrell*, 574 F.2d at 833). Foreman's case is instead similar to *United States v. Blasco*, 702 F.2d 1315, 1332 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 275, 276, 78 L.Ed.2d 256 (1983), where the court held that participation could be inferred from the following circumstances surrounding presence in the area: secluded property, early morning hours, an off-loading operation, noise created, and the odor of marijuana.

ranch the day after the plane landed there. They contend this evidence was not substantial enough to establish their involvement in the marijuana operation. Appellants' Individual Reply Brief 5–6. We disagree for three reasons.

First, other evidence was produced at trial linking Denis to the conspiracy. He was identified in a photograph with other co-defendants building a shed that the jury could reasonably infer was to be used in the illegal operation. (Tr. 1024–26). Additional evidence was also presented supporting the inference he was involved in the operations when the plane landed.[11]

Second, the jury could decide between the conflicting evidence as to whether these two defendants smelled of aviation fuel when arrested on March 28, 1983.[12] Officer Ward, who testified that he smelled aviation fuel on these defendants, had spent more than five years working on military aircraft; he agreed that in the course of his military duties he was "always in contact or around aviation fuel" (Tr. 710). A jury could thus reasonably believe his testimony concerning the odor he detected on these defendants. It could also infer that the odor came from the running fuel pump found within the trailer-truck left abandoned at the scene of the crime.

Third, the circumstances surrounding the arrests of Denis and Carralero tend to show that they were involved in the conspiracy rather than chopping wood as they claimed. From testimony given by James Hansen and Officers Griego and Ward,[13] the jury could infer that Denis and Carralero gave a false explanation for their presence in the area in an attempt to cover up their involvement in the illegal scheme.

For these reasons, we conclude that sufficient evidence was presented at trial to connect Denis and Carralero to the conspiracy to possess marijuana.

■■■ (6) **Mario Hernandez:** Hernandez contends that the evidence introduced against him showed only that he was present approximately 20 miles from the Austin ranch when arrested and that he associated with some of the defendants. He asserts that this evidence was not substantial enough to sustain his conviction for conspiracy. Appellant's Individual Opening Brief 10. We disagree because additional evidence was presented so that the evidence as a whole supports his conspiracy conviction.

A rental agreement for a Ford Bronco was discovered 100 feet from the plane with Hernandez' name on it. (Government's Exhibit 10; Tr. 804–05). The Bron-

11. A sweepstakes certificate issued to "Mrs. Crecencio J. Denis" was obtained from a motel room containing building equipment, filters for diesel engines, flares, and a hat identified in a photograph of co-defendant Martin. (Government's Exhibit 47; Tr. 852–54). *See supra* note 6. In corroboration, the motel clerk testified that she twice saw Denis in late March 1983 during the time she rented that room and another to a group of Cubans from Florida (Tr. 1080, 1085–86, 1092–93); she further testified that she checked the rooms on March 28 or 29, 1983, and discovered that the occupants had not slept in them. (Tr. 1080–82).

12. Officer Tony Griego testified as follows:
Q. Sir, did you observe their physical features, was there anything unusual about their—their person when you saw them?
A. Yes. They were very dirty, their body odor—like they hadn't taken a bath for at least three—two days, something like that. (Tr. 653).
In contrast, Officer Charles Ward testified as follows:

Q. And did you have an occasion to observe any odor about these persons?
A. Yes, sir; I did.
Q. And what type of odor did you detect, sir?
A. Aviation fuel.
(Tr. 671).

13. James Hansen testified that he observed Denis and Carralero on his ranch around 1:00 p.m. on March 28, 1983; he testified that they asked for a drink of water and a ride to Albuquerque and explained that their pick-up had broken down in the mountains where they were chopping wood. (Tr. 387–88). Officers Griego and Ward, who two hours later picked up the defendants walking toward the highway from Hansen's ranch, testified that they were given the same explanation by defendants. (Tr. 652, 670). However, Officers Griego and Ward also testified that they tried to locate the allegedly disabled vehicle without success. (Tr. 654, 670–71).

co was also found abandoned near the landing site. (Tr. 254). Officer Charles Timolty testified that he matched a piece of a broken parking light lens discovered at the landing site to the broken parking light of this vehicle. (Government's Exhibit 12; Tr. 879–80). Keys to the Bronco were further discovered among Hernandez' personal effects. (Tr. 1288–89).

Hernandez argues that this circumstantial evidence placing him at the scene of the crime was "inconclusive," and the rental contract for the car had little evidentiary value in light of the rental agent's testimony identifying co-defendant Denis as the one who signed the agreement. Appellant's Individual Opening Brief 6–9. However, Hernandez fails to explain why the keys to the Bronco were found in his possession. Such evidence directly links him to the abandoned car; from this evidence, a jury could reasonably infer that Hernandez was involved in the operations connected with the plane's landing. We hold that enough evidence was introduced to sustain Hernandez' conspiracy conviction.

■ (7) **Leovigildo Nunez:** Nunez claims that the only evidence offered against him was that he may have known or associated with some of the co-defendants. He contends this evidence was insufficient to prove he participated in the criminal enterprise. Appellant's Individual Opening Brief 11.

We disagree. We note that evidence was introduced of Nunez' proximity to the landing site and close association about the time of the landing with a co-defendant

implicated in the conspiracy.[14] Nunez also used the name "Virgilio Morales" for identification purposes on two occasions—when he was arrested and when he was stopped at a roadblock on March 12, 1983. (Government's Exhibit 58; Tr. 633–36, 433–36). Howard Johnson, a real-estate broker, testified that he sold land, which the jury could infer was to be utilized in the marijuana operation, to a "Virgilio Morales" on March 16, 1983. (Tr. 510–11). Although Johnson was unable to identify Nunez as the "Morales" who bought the land, his use of the same alias indicates he more than merely associated with other defendants.[15] We therefore conclude that enough evidence was introduced to sustain Nunez' conviction on the conspiracy count.

■ (8) **Luis Santa Cruz:** Santa Cruz asserts that although the government established his association with many of the co-defendants, it failed to show his connection to the plane, the Austin ranch, the marijuana or any of the vehicles found in the vicinity of the landing site. He contends that the evidence was thus insufficient to show he knew of and participated in the conspiracy. Appellant's Individual Opening Brief 13–14.

It is true that there was a significant difference as to Santa Cruz because he was not found or arrested near the Austin ranch and was instead arrested in Albuquerque two days after the plane landed. There was, however, circumstantial evidence tending to show Santa Cruz' involvement in the crime,[16] including evidence indi-

---

**14.** Nunez was picked up hitchhiking with co-defendant Hernandez around 5:00 a.m. near the Austin ranch. (Tr. 392–93). Both Nunez and Hernandez gave the same explanation for their presence in the area—that they were headed for Dallas looking for jobs. (Tr. 394). However, we have already determined that the evidence was sufficient to support the inference that Hernandez was involved in the operations connected with the plane's arrival.

**15.** The following evidence indicated that Nunez associated with some of the co-defendants: he was in the company of co-defendant Hernandez when arrested; co-defendant Santa Cruz' business card was found among his personal effects

(Tr. 1294); an officer testified that he saw Nunez with a co-defendant in the pick-up later seized upon the arrests of co-defendants Larrazleta and Martin (Tr. 435–39); a hotel employee testified that he observed Nunez with a co-defendant in February 1983 (Tr. 1089). Appellant's Individual Opening Brief 8.

**16.** The following evidence was introduced by the government: a motel employee testified that Santa Cruz did not sleep in his room on the night of the crime (Tr. 839–41); Santa Cruz was wearing bulky, layered clothing, appeared dusty, and had scratches on his arms and "leafy materials" on his clothing when arrested (Tr. 846); and testimony that a cardholder contain-

cating that he aided in the construction of a shed on land located near the Austin ranch. (Government's Exhibit 23–B–6, 10; Tr. 1023–25, 1071–72).

Santa Cruz was not required to know all the details of the plan for conviction; we therefore conclude that the evidence as a whole was sufficient to connect him to the conspiracy and that one could infer he was aware of the scheme's general scope and knowingly participated in it. For this reason, we uphold Santa Cruz' conviction on the conspiracy count.

**B. Possession with intent to distribute**

 Defendants also contend that there was insufficient evidence to sustain their convictions for possession of marijuana with intent to distribute.[17] We realize no evidence was presented showing defendants actually possessed the marijuana found in the abandoned truck. However, we have held that those "engaged in a joint undertaking relative to the marijuana" may be found to be in constructive possession of the contraband. *United States v. Stricklin,* 534 F.2d 1386, 1390–91 (10th Cir.), *cert. denied,* 429 U.S. 831, 97 S.Ct. 92, 50 L.Ed.2d 95 (1976).

> Constructive possession is possession in law but not in fact. A person in constructive possession of an item knowingly holds the power and ability to exercise dominion and control over it. *United States v. Zink,* 612 F.2d 511, 516 (10th Cir.1980); *Amaya v. U.S.,* 373 F.2d 197, 199 (10th Cir.1967). "In essence, constructive possession is the ability to reduce an object to actual possession." *United States v. Martinez,* 588 F.2d 495, 498 (5th Cir.1979) (footnote omitted). Constructive possession may be joint among several individuals and may be

established by circumstantial evidence. *Id.; United States v. Riggins,* 563 F.2d 1264, 1266 (5th Cir.1977), *cert. denied,* 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 150. (Emphasis added).

*United States v. Massey,* 687 F.2d 1348, 1354 (10th Cir.1982).

In *Massey,* we held that even though the defendant was not driving the car in which marijuana was found, sufficient evidence was introduced showing a "cooperative venture ... to permit the inference that a working relationship existed among the group members by which [defendant] had 'some appreciable ability to guide the destiny of the drug.'" *Id.* Therefore, the evidence of constructive possession was considered substantial enough to sustain his conviction.

 We recognize mere proximity to illegal drugs, mere presence on the property where they are located, or mere association with persons who do control them, without more, is insufficient to support a finding of possession. *United States v. Staten,* 581 F.2d 878, 884 (D.C.Cir.1978); *United States v. Ratcliffe,* 550 F.2d 431, 434 (9th Cir.1977). However, "such proximity, presence or association is sufficient when accompanied ... with testimony connecting the defendant with the incriminating surrounding circumstances." *Ratcliffe,* 550 F.2d at 434; *see also Staten,* 581 F.2d at 884–85.

 Here additional evidence was offered against each defendant to connect him individually with the incriminating surrounding circumstances. There was evidence to support the inference that the defendants were all participants in a conspiracy to possess and distribute marijua-

---

ing Santa Cruz' business card was found under the seat of a police car in which co-defendant Larrazleta had been riding when arrested near the landing site on the night of March 27, 1983 (Tr. 442).

**17.** Intent to distribute may be inferred from the large amount of marijuana (approximately 20,000 pounds) discovered in the abandoned truck.

*See United States v. DuFriend,* 691 F.2d 948, 951–52 (10th Cir.1982), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1017 (1983) (intent to distribute inferred from 600 pounds of marijuana). In addition, intent to distribute may be inferred from the testimony of a DEA agent that the marijuana seized was worth $10,000,000. (Tr. 1351).

na.[18] This case is therefore similar to *United States v. Watkins*, 662 F.2d 1090, 1097–98 (4th Cir.1981), where the court held that at some stage of a transaction involving the delivery, unloading and transportation of 23,000 pounds of marijuana, "each defendant had the power to exercise dominion and control over the marijuana." *Id.* at 1098. Accordingly, we hold that the evidence of constructive possession was sufficient to support each defendant's conviction on the charge of possession with intent to distribute.

## III

### THE RIGHT TO CONFRONTATION

 All the defendants except Foreman argue on appeal that the trial court committed reversible error in failing to grant a mistrial or severance after incriminating comments were made by Foreman concerning his co-defendants in his opening statement.[19] Relying on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1963), they assert that their Sixth Amendment right to confront witnesses was violated because Foreman's statements directly implicated them in the crimes charged and they had no opportunity to refute the allegations through cross-examination of Foreman; therefore, it was prejudicial error of constitutional magnitude to allow jury consideration of these comments. Defendants also contend that under Fed.R.Crim.P. 14, the trial court abused its discretion in failing to grant a severance of Foreman from the other defendants; they claim that the resulting prejudice could not be dispelled by the court's limiting instructions.[20] Joint Opening Brief of Appellants 38–42. We, however, conclude that the trial court did not commit reversible error in this respect.

We believe that *Bruton* is not controlling here. Instead, we hold this case is more closely analogous to *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). In *Bruton*, a non-testifying co-defendant's confession inculpating the defendant was admitted *into evidence* in a joint trial; although the jury was instruct-

---

**18.** The government presented only slight circumstantial evidence to show that defendant Santa Cruz was present on the Austin ranch the night of March 27, 1983. *See supra* note 16. However, the circumstantial evidence supporting the finding of his participation in the conspiracy also supports the finding that he aided and abetted others in the possession of the marijuana with *intent to distribute. See supra* note 2. His behavior thus renders him punishable as a principal for possession with intent to distribute. *Nye & Nissen v. United States*, 336 U.S. 613, 619–20, 69 S.Ct. 766, 769–70, 93 L.Ed. 919 (1948); *Nance v. Baker*, 400 F.2d 864, 866 (10th Cir.1968); *United States v. Soto*, 591 F.2d 1091, 1104 (5th Cir.), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979).

**19.** Defendants object to the following portion of Foreman's pro se opening statement:

I came up here, I believe the 26th and I ran into a guy who spoke kind of broken English. He told me he had an automobile, that he would pay me if I drove it to Miami. I said fine.

This man brought me out to this farm. When I got out to the farm, this business that's been—been going on was happening. I was pointed to a vehicle and told that was the vehicle. I knew something was up and I didn't drive out with any convoy. I stayed behind, I let all these people leave. They were speaking, I guess, Spanish. I drove out after the[m] and I was arrested. (Tr. 116).

**20.** The court instructed the jury as follows at the close of the case:

As I stated earlier, it is your duty to determine the facts, and in so doing, *you must consider only the evidence I have admitted into the case.*

The term evidence includes the sworn testimony of the witnesses, the stipulations of counsel and the exhibits admitted into the record.

*Remember that any statements, objections or arguments made by the lawyers are not evidence in the case.* The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case. And in so doing, to call your attention to certain facts or inferences that might have otherwise escaped your notice.

In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you. (Emphasis added).

(Tr. 1759). The court also gave similar instructions to the jury at the beginning of the case *before* opening statements were presented (Tr. 89).

ed to disregard the confession in determining the defendant's guilt or innocence, the Supreme Court held that the admission of .these "powerfully incriminating extrajudicial statements" violated defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. *Bruton,* 391 U.S. at 126, 135, 88 S.Ct. at 1622, 1627. In so holding, the Court recognized:

> Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. "A defendant is entitled to a fair trial but not a perfect one." It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. (Citations omitted).

*Id.* at 135, 88 S.Ct. at 1627.

In *Frazier,* the prosecutor *during opening statement* summarized testimony he expected to receive from a witness who subsequently refused to testify at trial; the petitioner claimed that this summary of evidence was equivalent to "testimony," and that under *Bruton* he was thus denied his constitutional right of confrontation. The Supreme Court, however, held that the two cases were distinguishable and that the trial court's instruction not to consider counsel's statements as evidence was sufficient to protect petitioner's constitutional rights. *Frazier,* 394 U.S. at 735, 89 S.Ct. at 1422. In so holding, the Court reasoned:

> It may be that some remarks included in an opening ... statement could be so prejudicial that a finding of error, or even constitutional error, would be unavoidable. But here we have no more

than an objective summary of evidence which the prosecutor reasonably expected to produce.... Even if it is unreasonable to assume that a jury can disregard a coconspirator's statement when introduced against one of two joint defendants, *it does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to the evidence introduced during the trial....* "[I]t is hard for us to imagine that the minds of the jurors would be so influenced by such *incidental statements during this long trial* that they would not appraise the evidence objectively and dispassionately." (Emphasis added).

*Id.* at 736, 89 S.Ct. at 1423.

Here we have a situation involving a pro se attorney defendant who during his opening statement sought to separate himself out from his co-defendants as an innocent party in the marijuana scheme. Although we recognize that Foreman's statement was closer to "testimony" than the attorney's summary of expected evidence in *Frazier,*[21] we will not apply *Bruton* unless Foreman's comments were " 'clearly inculpatory' as to the complaining co-defendant[s] and ... 'vitally important to the government's case.' " *United States v. Sacco,* 563 F.2d 552, 556 (2d Cir.1977), *cert. denied,* 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978) (quoting *United States v. Wingate,* 520 F.2d 309, 313 (2d Cir.1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976)). The court here carefully instructed the jury, both before opening statements were given and at the close of the trial, that it was to consider only the evidence introduced at trial and that nothing the lawyers said in their statements

---

**21.** It has been noted that "[a] trial involving a pro se defendant and co-defendants who are assisted by counsel is pregnant with the possibility of prejudice." *United States v. Veteto,* 701 F.2d 136, 139 (11th Cir.), *cert. denied, sub nom., Wescott v. United States,* 463 U.S. 1212, 103 S.Ct. 3548, 77 L.Ed.2d 1396, *cert. denied,* 464 U.S. 839, 104 S.Ct. 131, 78 L.Ed.2d 127 (1983). In *United States v. Maurice,* 416 F.2d 234, 236–37 (9th Cir.1969), it was also held that no prejudice oc-

curred when a defendant's *attorney* made comments during opening statement, implicating the co-defendant as "the only reprehensible culprit;" the court so held partly because the "attorney did not represent to the jury that he was communicating any information received from [the defendant]." Here defendant Foreman pro se, and not a designated attorney representing him, made the allegedly incriminating statements about the co-defendants.

was evidence in the case.[22] In addition, this is not a case where "powerfully incriminating" statements inculpating co-defendants were introduced into evidence; Foreman's generalized and brief references to a "convoy" and "all these people ... speaking ... Spanish" do not amount to such statements of vital importance to the prosecution's case.[23]

In the context of this trial, we conclude that the jury was able to limit its consideration to only the evidence introduced at trial and to remain uninfluenced by the "incidental statements [made in opening argument] during this long trial." Thus no reversible error is shown on this point.

## IV

## THE PROSECUTOR'S CLOSING ARGUMENT

Defendants as a group assert that they are entitled to a reversal of their convictions because of improper comments made by the prosecuting attorney in closing argument. They specifically object to references made by the prosecutor to the testimony of a rancher, who lived near the Austin ranch and who testified that he had seen the same plane as that discovered on March 28, 1983 on three prior occasions in the vicinity of the ranch (Tr. 1748–49). The prosecutor further stated:

> What you are being told here is that—that these ten before you ought to be—and you have been told, ought to be given their freedom. They're stripped now, and have been since March the 28th, of any dream of quick riches, but they're asking you on the basis of—they're asking you that—*that you return them to their freedom so that they can act again like they did on March the 28th, 1983 ...* (Emphasis added). (Tr. 1750).

Defendants contend that these statements were prejudicial because they indicated convictions were necessary to prevent the de-

22. *Cf. Jentges v. Milwaukee County Circuit Court,* 733 F.2d 1238, 1242 (7th Cir.1984) ("trial court's instructions to the jury made it clear that the opening and closing statements are not to be considered as evidence and thus negated any damage that may have occurred as a result of the alleged misstatements made by the prosecutor"); *United States v. Mota,* 598 F.2d 995, 1000 (5th Cir.1979), *cert. denied,* 444 U.S. 1084, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1980) (since the jury was given adequate instructions not to consider the comments of counsel as evidence, co-defendant's attorney did not prejudice Mota during opening statement when he admitted the guilt of the co-defendant); *United States v. Somers,* 496 F.2d 723, 738 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974) (prejudicial effect of prosecutor's improper opening remarks neutralized by instructions to the jury that statements of counsel did not constitute evidence); *United States v. Sparano,* 422 F.2d 1095, 1099 (2d Cir.1970) (instructions to the jury that the opening statement was not to be considered as evidence were such that the jury could understand and follow them).

23. *Cf. Guzzardo v. Bengston,* 643 F.2d 1300, 1303 (7th Cir.), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981) (summarization of expected testimony as to prior bad acts did not so prejudice the jury as to deny defendant a fair trial); *Salemme v. Ristaino,* 587 F.2d 81, 88 (1st Cir.1978) ("ambiguous" conversation between an FBI agent and appellant, as related in the prosecutor's opening statement, did not "suggest so inflammatory an atmosphere as to render the trial unconstitutional"); *United States v. Akin,* 562 F.2d 459, 466 (7th Cir.1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978) (summarization of expected testimony which was "brief and not given undue emphasis" had de minimis impact on the trial); *United States v. Somers,* 496 F.2d 723, 738 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974) (length of trial serves to minimize the effect of improper comments made during opening statement); *United States v. West,* 486 F.2d 468, 472 (6th Cir.1973), *cert. denied,* 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974) (summary of expected testimony which was "not emphasized in any particular way, [took] only a few minutes to recite, and [was] sandwiched between a summary of other evidence" did not deprive defendant of his right of confrontation); *United States v. Carlson,* 423 F.2d 431, 437 (9th Cir.), *cert. denied,* 400 U.S. 847, 91 S.Ct. 94, 27 L.Ed.2d 84 (1970) (posing of hypothetical question, assumed to be equivalent to testimony by a non-testifying co-defendant, created at most only minimal prejudice to defendants); *United States v. Sparano,* 422 F.2d 1095, 1099 (2d Cir.1970) (from comments made during opening statement, the possibility that the jury could infer accomplices were "pointing a finger of guilt at the defendant" was too remote and speculative to constitute a *Bruton* violation).

fendants from committing the same crime again; they also contend that, although the trial court sustained their objection to these remarks, its failure to strike the comments or to instruct jurors to disregard them deprived defendants of a fair trial. Joint Opening Brief of Appellants 46–47.

[18, 19] Although we recognize that considerable latitude is given the prosecutor in closing argument in replying to defense arguments,[24] the prosecutor's statements here were improper. *See* 3 W. La-Fave & J. Israel, *Criminal Procedure* § 23.5, at 34 (1984) ("it is improper for the prosecutor to assert that . . . if the defendant is acquitted he would commit further crimes"). However, we do not feel that they constituted reversible error on this record as a whole. To determine whether defendants have been deprived of a fair trial, we must view the improper remark in the context of the entire record before the jury. *United States v. Shelton*, 736 F.2d 1397, 1406 (10th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984); *United States v. Dickey*, 736 F.2d 571, 596 (10th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). We will not overturn the convictions unless the prosecutor's misconduct "was enough to influence the jury to render a conviction on grounds beyond the admissible evidence presented." *United States v. Dickey*, 736 F.2d at 596; *see also United States v. Hodges*, 480 F.2d 229, 234 (10th Cir.1973).

Here the independent evidence presented against defendants was substantial. While improper, we do not feel the prosecutor's comment was such as to require reversal. *See Dickey*, 736 F.2d at 576; *see also United States v. Haskin*, 737 F.2d 844, 850 (10th Cir.1984) (prosecutor's remarks gave rise at most to harmless error in light of government's proof); *United States v. Shovea*, 580 F.2d 1382, 1390–91 (10th Cir.1978), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 569, 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456

(1979) (prosecutor's comment did not result in "clear error" because of the "significant factor" of the strength of the case against defendant). In addition, the trial judge sustained defendants' objections to the remarks in open court. Also, on two other occasions, the jury was instructed that the statements and arguments of counsel were not evidence and were not to be considered in rendering a verdict. *See United States v. Haskins*, 737 F.2d at 850 (the instructions to the jury negated any error created by the prosecutor's remarks); *United States v. Dickey*, 736 F.2d at 596 (the holding that no prejudice resulted from the prosecutor's closing statement was bolstered by the fact that the trial court sustained defense counsels' objection and adequately instructed the jury that arguments by the attorney were not evidence); *Devine v. United States*, 403 F.2d 93, 96 (10th Cir.1968), *cert. denied*, 394 U.S. 1003, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969) (the improper "personal belief" statement of government counsel did not constitute reversible error in light of the court's admonition that the jury was not to consider the opinions of counsel).

We conclude that the prosecutor's improper remarks here were not such as to influence the jury to render a verdict on grounds beyond the admissible evidence presented. We hold the comments made during closing argument and the trial court's handling of the objection do not require a reversal.

Defendant Foreman also individually asserts that the prosecutor improperly attempted to draw the jury's attention to his failure to testify by making the following comments during closing argument: "Who is 'they'? You recall Mr. Luna's testimony. Mr. Foreman gets out of the car and he says, 'What's going on here. They asked me to drive the vehicle.' In your deliberations, I think that you might consider this

---

**24.** *See United States v. Bishop*, 534 F.2d 214, 220 (10th Cir.1976); *see also Cronnon v. Alabama*, 587 F.2d 246, 251 (5th Cir.), *cert. denied*, 440

U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979); *United States v. Barker*, 553 F.2d 1013, 1025 (6th Cir.1977).

evidence and arrive at a conclusion who 'they' is." (Tr. 1737).[25]

■■■ Although it is a rule of paramount importance that a prosecuting attorney may not comment on a defendant's failure to testify at trial, we will not consider a statement improper in this respect unless it " 'was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' " *United States v. Bennett,* 542 F.2d 63, 64 (10th Cir.1976), *cert. denied,* 429 U.S. 1048, 97 S.Ct. 757, 50 L.Ed.2d 763 (1977) (quoting *Knowles v. United States,* 224 F.2d 168 (10th Cir.1955)). We have also held that the prosecutor has "latitude in closing argument to make fair comment on the evidence and to draw reasonable inferences therefrom." *Id.* In *Bennett,* we concluded that the prosecutor's closing remarks, pointing out that defendant made an inculpatory rather than exculpatory statement when confronted by police, were fair comments on the evidence and were not erroneous comments on failure to testify.

■■■ Similarly, defendant here did not remain totally silent when arrested, and testimony as to what he did say was in evidence. The prosecutor could therefore fairly comment on this evidence in closing argument. His remarks were not of such a character that the jury would necessarily consider them to be statements about Foreman's failure to testify; rather, the jury could consider the statements as an attempt to emphasize the weakness and implausibility of Foreman's given explanations. Accordingly, we hold that these remarks by the prosecutor were not improper or erroneous comments about Foreman's failure to testify requiring reversal.

## V.

## THE PROPRIETY OF SENTENCING

All defendants except Santa Cruz argue that their sentences are excessive because the trial court abused its discretion in imposing a fifteen year sentence upon each defendant without considering individual mitigating circumstances. They also contend that comments made by the trial judge at the sentencing hearing indicated the sole reason for sentencing defendants to the same term of imprisonment was to penalize them improperly for exercising their Fifth Amendment privilege against self-incrimination by not explaining their degree of involvement in the offenses.[26]

■■■ The sentences imposed here fall within the maximum fifteen year terms permitted under 21 U.S.C. §§ 841 and 846 on each count.[27] We therefore begin with

25. Foreman further argues that the prosecutor prejudicially misrepresented the evidence by referring to radio "equipment" found in his vehicle (Tr. 1734, 1737), and that the prosecutor improperly voiced personal opinions damaging to Foreman's defense of uninvolvement (Tr. 1747, 1748). Appellant Foreman's Brief-in-Chief 44–45. These arguments are without merit. Evidence was introduced at trial that Foreman's vehicle contained "equipment" (Tr. 875–77); the prosecutor therefore did not misrepresent the evidence by referring to such "equipment" or inferring from this evidence that Foreman was involved in the scheme. We also cannot agree that Foreman's defense was damaged or the jury's verdict affected by the statements, "[U]s poor ol' boys in New Mexico could never find where [the aviation fuel] came from" or "[Y]ou ought not to pay any attention to [the argument that the government put its stamp of approval on uncharged individuals] because their day may come."

26. Defendants specifically point to the following comments made by the district judge:

[I]nasmuch as none of the defendants—all of the defendants were given an opportunity to express their views or give the Court some indication of what the extent of their involvement was, and properly denied that opportunity, relying upon the advice of counsel. For that reason, the Court is unable to determine to what extent the culpability of each defendant is and therefore the Court is constrained to find each one equally culpable, although I think that the Court is persuaded that there were other people more profoundly involved in this venture which are not before the Court, and the Court has taken that into consideration in—in setting a sentence. (Tr. 1804).

27. Section 841(b)(6), applicable in 1983 when defendants' offenses occurred, provided that "[i]n the case of a violation of subsection (a) of this section involving a quantity of marihuana

the general proposition that when a sentence is imposed within statutory limits, it is not ordinarily subject to appellate review. *United States v. Dickey*, 736 F.2d 571, 597–98 (10th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); *United States v. Prazak*, 623 F.2d 152, 155 (10th Cir.), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980). We will review the sentences only if the trial judge based them on "misinformation of constitutional magnitude" or failed to exercise any discretion in the sentencing process. *United States v. LeMon*, 622 F.2d 1022, 1024–25 (10th Cir.1980). Appellate review is appropriate "when a trial court fails to afford individual treatment, imposes a sentence mechanically, or refuses to consider all the mitigating circumstances." *United States v. Davis*, 573 F.2d 1177, 1182 (10th Cir.), *cert. denied,* 436 U.S. 930, 98 S.Ct. 2829, 56 L.Ed.2d 775 (1978). However, "a sentencing judge has considerable discretion and leeway in determining, from the totality of the circumstances, the extent of the individual punishment to be meted out for each offense committed." *Id.* at 1181; *see also United States v. Gigax*, 605 F.2d 507, 513 (10th Cir.1979).

We concluded in *United States v. LeMon*, 622 F.2d at 1025, that a trial judge did not act improperly in pronouncing sentence where sentencing proceedings were held and the defendant was given a full opportunity to argue his case, the court was furnished with a presentencing report, and the evidence disclosed that defendant was involved in an illegal scheme. *Cf. United States v. Torres*, 733 F.2d 449, 462 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 204, 83 L.Ed.2d 135 (1984) (no abuse of discretion because the trial judge observed appellants throughout trial, thoroughly reviewed presentence reports, listened to defense counsel's arguments for mitigation, and afforded appellants the right to present arguments in their defense); *United States v. Brubaker*, 663 F.2d 764, 769 (7th Cir.1981) (no abuse of discretion partly because the district judge stated he had read the presentence report, allowed defendants to present witnesses, and heard statements of counsel). It has also been held that an appellate court will not review or modify a sentence imposed within statutory limits merely because the defendant received the same sentence as an allegedly guiltier co-defendant; the court further will not review a sentence merely because statements were presented to the trial court referring to defendant's "unblemished character and background and likelihood of rehabilitation." *United States v. Frontero*, 452 F.2d 406, 410 (5th Cir.1971).

Here the trial judge had the opportunity to hear evidence concerning the defendants throughout the trial. He held a sentencing hearing where defendants and defense counsel were individually invited to present arguments in mitigation. At various times the judge referred to having read individual presentence reports. (*E.g.*, Tr. 1799–80, 1828–29, 1832). He further indicated that he took individual factors into

---

exceeding 1,000 pounds, such person shall be sentenced to a term of imprisonment of not more than 15 years, and in addition, may be fined not more than $125,000." Section 846 provides that "[a]ny person who ... conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense."

The district judge here could have sentenced defendants to consecutive sentences amounting to thirty years of imprisonment and fined them up to $125,000 for each offense. *See United States v. Wylie*, 625 F.2d 1371, 1382 (9th Cir.

1980) ("we conclude that Congress did intend to allow courts to impose consecutive sentences for conspiracy (21 U.S.C. § 846), and for substantive offenses (21 U.S.C. § 841(a)(1)), even when the proof necessary to obtain a conviction for the former was necessary to obtain a conviction for the latter offense"), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). The judge, however, decided to impose sentences within the maximum by sentencing each defendant to a five year term of imprisonment as to Count I (conspiracy) and a ten year term of imprisonment on Count II (possession with

consideration,[28] but was constrained to find each defendant equally culpable due to the lack of evidence concerning their relative involvement in the marijuana operation. As noted in *Farrow v. United States*, 580 F.2d 1339, 1350 (9th Cir.1978), " '[a] sentence can be tailored to fit an individual defendant only to the extent that the judge is aware of the major facts relevant to needed correction.' " Here we cannot conclude that the trial judge abused his discretion in sentencing the defendants to the same term of imprisonment. Various defendants' arguments that they were less culpable than other defendants, had "unblemished character and background," and were likely to be rehabilitated do not persuade us to hold otherwise.

 Moreover, the Fifth Amendment privilege against self-incrimination was not violated during this sentencing process. The judge's remarks concerning the defendants' silence were not made in an attempt to deny them that privilege; in fact, he expressly recognized the defendants' right to remain silent. Instead, the com-

ments were made to explain why he decided to sentence defendants to the same term of imprisonment. Such comments are proper and do not penalize defendants for exercising their Fifth Amendment rights. *See United States v. Washington*, 586 F.2d 1147, 1156 (7th Cir.1978) (district court's remark that "it would have to conclude that defendants [in a conspiracy case] acted for themselves since defendants had refused to tell the court anything about their [minimal] involvement in a larger scheme" did not penalize defendants for remaining silent, but rather "set forth the framework in which it viewed the defendants' involvement in the crimes for which they stood convicted").[29]

We hold that the trial judge did not abuse his discretion in sentencing all defendants to fifteen year terms of imprisonment.

## VI.

## VOIR DIRE

As a group, defendants contend that the trial judge committed reversible error in

---

intent to distribute), to run consecutively to the sentence imposed on Count I.

**28.** The trial judge noted on one occasion that because defendant Foreman was an attorney he should have been held to a higher standard. (Tr. 1821–22). He also stated the evidence seemed to suggest that defendant Larrazleta was more involved than other codefendants in the illegal operation. (Tr. 1825).

**29.** The Court's decision in *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), does not persuade us to conclude otherwise. There the Court recognized that a defendant's Fifth Amendment privilege against self-incrimination is violated when a penalty is imposed or punishment threatened for asserting that privilege. 465 U.S. at ———, 104 S.Ct. at 1146. The Court held, however, that Minnesota's probation revocation statute merely required probationers to appear and give testimony about their probationary status and did not attach an impermissible penalty to the exercise of the privilege against self-incrimination in providing that a probationer's failure to be truthful with his probation officer could result in revocation of probation. *Id.* 465 U.S. at ——— ———, 104 S.Ct. at 1146–47.

Here the district court neither threatened punishment nor imposed a penalty on defendants

for exercising their right to remain silent during sentencing; the trial judge commented on defendants' silence only to explain that he was sentencing defendants to the same term of imprisonment because he was "unable to determine to what extent the culpability of each defendant [was]." This statement indicates only that the trial judge was basing the sentences on the lack of evidence concerning defendants' relative involvement in the marijuana operation.

Moreover, we also find that this case is distinguishable from *LeBlanc v. United States*, 391 F.2d 916, 917–18 (1st Cir.1968), and *Thomas v. United States*, 368 F.2d 941 (5th Cir.1966). In *LeBlanc*, the trial court asked defendant whether he was in fact guilty before imposing a sentence and stated that defendant could "take the responsibility for not answering." In *Thomas*, the trial judge asked defendant to "come clean" and stated that if defendant persisted in his denial of participation in the crime, then that would be taken into account for sentencing purposes. Here, however, the court did not question defendants about their guilt or seek confessions from them on sentencing. The court expressly recognized defendants' right to remain silent and commented on their silence only to explain that he was "constrained" to find each defendant equally culpable due to the lack of an expression or indication by defendants on the extent of their involvement.

refusing to ask each prospective juror whether he or she would give more weight to the testimony of a law enforcement officer simply because he is a law enforcement officer. They argue that their right to a fair and impartial jury and their right to exercise sensitive and intelligent peremptory challenges were infringed since the government's proof consisted primarily of police testimony and the officers' credibility was at issue. Joint Opening Brief of Appellants 20–21, 36.

■■■ The scope of voir dire examination is a matter within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear showing of abuse of discretion. *United States v. Ainesworth,* 716 F.2d 769, 770 (10th Cir.1983); *United States v. Baker,* 638 F.2d 198, 201 (10th Cir.1980). We recognize that the court's failure to ask jurors the requested question may constitute reversible error when the case, like this, consists primarily of police testimony. *See United States v. Baker,* 638 F.2d at 201 n. 3; *United States v. Baldwin,* 607 F.2d 1295, 1297 (9th Cir. 1979); *Faulkner Radio, Inc. v. F.C.C.,* 557 F.2d 866, 871–72 (D.C.Cir.1977); *Brown v. United States,* 338 F.2d 543, 544–45 (D.C. Cir.1964). However, reversal is not required in all such cases; rather, "the issue turns on the degree of impact which the testimony in question would be likely to have had on the jury and what part such testimony played in the case as a whole." *Brown v. United States,* 338 F.2d at 545; *see also United States v. Baldwin,* 607 F.2d at 1298; *Faulkner Radio, Inc. v.*

*F.C.C.,* 557 F.2d at 872 n. 36. Specifically, courts have held that refusal to ask the question does not amount to an abuse of discretion when the trial judge adequately covers the issue in other questions and in his charge to the jury.[30]

■■■ The trial judge here asked the prospective jurors if they had ever been employed by the government; he then individually questioned those who responded in the affirmative as to whether they would be more inclined to believe the government's witnesses and whether they could try the case impartially. (Tr. 41–44). The judge also asked the potential jurors if they had friends or relatives in the law enforcement business; for each of those responding in the affirmative, he posed additional questions about possible biases arising from those relationships. (Tr. 53–56). Finally, the trial judge asked all prospective jurors whether they were of a "frame of mind" which the defendants would *not* want in a juror. (Tr. 57). These questions, coupled with instructions to the jury to base their verdicts on the testimony "without prejudice or sympathy" (Tr. 1754), were sufficient to afford defendants adequate protection against prejudice. And we feel the voir dire did not deprive the defendants of a basis for soundly exercising their challenges.

Defendant Foreman also individually asserts that he was denied his right to a fair and impartial jury because the court refused his request for additional peremptory

---

**30.** *See United States v. Caggiano,* 667 F.2d 1176, 1178 (5th Cir.1982) (voir dire questions posed by the district court, coupled with its cautionary instructions, adequately protected defendants); *United States v. Golden,* 532 F.2d 1244, 1247 (9th Cir.), *cert. denied,* 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1976) (no abuse of discretion partly because the district court asked questions about prospective jurors' associations with law enforcement activities and individually questioned any juror who had such an association); *United States v. McGregor,* 529 F.2d 928, 931 (9th Cir.1976) (no abuse of discretion partly because prospective jurors who knew or were related to police officers were carefully questioned about possible biases stemming from those relationships); *United States v. Gassaway,*

456 F.2d 624, 625–26 (5th Cir.1972) (no abuse of discretion because the court instructed the jury on rules for weighing testimony without prejudice and asked prospective jurors whether they were biased against defendants, whether they were impartial between the government and defendants, and whether they knew or were related to police officers); *United States v. Jackson,* 448 F.2d 539 (5th Cir.1971), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 750, 30 L.Ed.2d 775 (1972) (same); *Gorin v. United States,* 313 F.2d 641, 647 (1st Cir.), *cert. denied,* 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963) (no abuse of discretion because the district court provided defendants ample protection on this issue by its general questions, coupled with its charge to the jury).

challenges and because voir dire was inadequate to ascertain the effect of pre-trial publicity on potential jurors.[31]

■ Fed.R.Crim.P. 24(b) provides that, for offenses punishable by imprisonment of more than one year, "the government is entitled to 6 peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges." We have held that under this rule, "when several defendants are indicted and tried together, they have a right to no more challenges than a single defendant." *United States v. Stidham,* 459 F.2d 297, 299 (10th Cir.), *cert. denied,* 409 U.S. 868, 93 S.Ct. 168, 34 L.Ed.2d 118 (1972). The district court granted defendants the ten peremptory challenges required by Rule 24(b). It was within the discretion of the court to refuse the additional challenges requested by Foreman. *See* 2 C. Wright *Federal Practice & Procedure* § 386, at 378 (1982).

■ As to the pre-trial publicity claim, defendant Foreman demonstrates no abuse of discretion in the handling of the voir dire in this respect. *See United States v. Whitt,* 718 F.2d 1494, 1496–99 (10th Cir. 1983); *see also United States v. Boston,* 718 F.2d 1511, 1517 (10th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984); *United States v. Primrose,* 718 F.2d 1484, 1488–89 (10th Cir. 1983), *cert. denied,* — U.S. ——, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984). The trial judge here similarly asked general questions about prospective jurors' exposure to pretrial publicity and individually questioned those whose initial responses aroused concern. (Tr. 46–53). He posed further questions as to whether jurors were acquainted with parties or counsel (Tr. 38–41) and probed the general area of partiality and bias (Tr. 57).

We conclude that the district court did not commit reversible error in the conduct of *voir dire* as it concerned defendant Foreman or the remaining defendants.

## VII

### EXHIBIT 77

Defendants all argue that the district court should not have admitted Exhibit 77 in evidence because, under Fed.R.Evid. 403, its probative value was substantially outweighed by the danger of misleading the jury or confusing the issues.[32] They say it was prepared before trial and shown to various witnesses as they testified, and was inaccurate. Joint Opening Brief of Appellants 48–49.

■ The trial court has "broad discretion" in balancing the probative value of this evidence against its prejudicial effect. *United States v. Mangiameli,* 668 F.2d 1172, 1176 (10th Cir.), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982); *see also United States v. Silverstein,* 737 F.2d 864, 866 (10th Cir.1984). We will not reverse its determination absent a showing of a clear abuse of discretion. *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561, 566–67 (10th Cir.1978). The exhibit here was useful in illustrating and tying together the testimony. Prejudice was minimized because the evidence was merely used to supplement oral testimony, was not taken by jurors to the jury room, and was not alluded to in closing arguments. *Cf. Wren v. United States,* 352 F.2d 617, 620 (10th Cir.1965) (admission of revolver shells into evidence was not prejudicial because they were only cumulative evidence, they were not taken into the jury room for consideration, and no particular emphasis was placed on them), *cert. de-*

---

**31.** We have considered and reject Foreman's additional contentions that the court abused its discretion in refusing to question or admonish a juror who saw him out of court shackled to a co-defendant and in not inquiring further about the ability of one of the potential jurors to hear or understand.

**32.** Exhibit 77 is a hand-drawn, unscaled map depicting the area in which the plane landed, the vehicles were found, and many of the defendants were arrested. It was shown to a number of witnesses during trial who were asked to indicate, by use of their initials, the location of the vehicles and where various defendants were arrested.

*nied,* 384 U.S. 944, 86 S.Ct. 1469, 15 L.Ed.2d 542 (1966). We hold that the district court did not abuse its discretion in admitting Exhibit 77 in evidence.

## VIII.

### SUPPRESSION OF EVIDENCE

Defendants Espinosa, Atucha, Larrazleta, Hernandez, Nunez, and Santa Cruz argue that the district court erred in denying motions to suppress evidence obtained on their arrests. They concede that the police officers had reason to stop and question them under the standards enunciated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, they say that they were illegally arrested without probable cause and that the evidence obtained as incident thereto should have been suppressed as "fruit of the poisonous tree."

■■■■ To determine whether probable cause existed for the arrests, an examination of the facts is necessary in each individual case. *United States v. Hansen,* 652 F.2d 1374, 1388 (10th Cir.1981); *United States v. Matthews,* 615 F.2d 1279, 1283 (10th Cir.1980). We have held that probable cause exists "where the facts and circumstances known to the police are sufficient in themselves to warrant a prudent officer in the belief that an offense has been or is being committed." *United States v. Borrelli,* 621 F.2d 1092, 1095 (10th Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 222 (1980); *see also United States v. Salinas-Calderon,* 728 F.2d 1298, 1300–01 (10th Cir.1984). Although the arresting officer need not possess knowledge of facts sufficient to prove guilt, more than mere suspicion is required. *United States v. Hansen,* 652 F.2d at 1388; *United States v. Matthews,* 615 F.2d at 1284. The police officers may, however, "pool their information" to establish proba-

ble cause. *United States v. Salinas-Calderon,* 728 F.2d at 1301–02.

■■■■ The trial court found that the arrests of defendants were based on probable cause and that, consequently, the seizures made incident thereto were proper and legal. (Tr. 12).[33] The court concluded that probable cause existed because the officers knew an airplane had been tracked into the United States and had landed late at night in a remote rural area of New Mexico; a large quantity of marijuana was involved in the landing; a convoy of vehicles met the plane and was observed departing from the scene without lights; and efforts to elude the police were made. (Tr. 10–11). The court reasoned that, by piecing together this information, the officers could tentatively conclude a criminal conspiracy involving a large quantity of contraband was unfolding before them. (Tr. 11).

■■■■ On review of the denial of the motions to suppress, we will accept the findings of fact made by the trial court unless clearly erroneous; if findings were not made, this court must still "uphold the ruling if there is any reasonable view of the evidence to support it." *United States v. Cooper,* 733 F.2d 1360, 1364 (10th Cir. 1984). The evidence as to the defendants and our conclusion from it is detailed in the Appendix to this opinion. From that evidence, we hold that the findings of probable cause and the refusal to suppress the evidence were not clearly erroneous.

## IX.

### FOREMAN'S MOTION FOR SEVERANCE

Defendant Foreman individually contends that the trial court erred in denying his motion for severance from the remaining co-defendants because: (1) two co-defendants indicated they would testify on behalf of Foreman if he were tried sepa-

---

**33.** The court also found that defendant Larrazleta lacked standing to assert that his Fourth Amendment rights were violated by the search of the GMC Suburban discovered upon his arrest and the subsequent seizure of film found within the vehicle. (Tr. 13). Both defendant and the government present arguments on appeal pertaining to this issue. We do not address the issue because our holding on the probable cause question moots concerns about standing.

rately; (2) severance would have allowed his attorney, who was ill and unable to proceed with the case, time to recuperate and participate at trial; and (3) the overwhelming evidence introduced against the other defendants prejudiced him since he was only minimally involved. He argues that the combined effect of these factors mandated severance, and that the district court abused its discretion by basing its decision on the first factor only.[34] Appellant's Brief-in-Chief 32–34.

Fed.R.Crim.P. 8(b) provides that several defendants may be indicted and tried jointly "if they are alleged to have participated in the same act or ... transactions constituting an offense or offenses." In such a case, the trial court may in its discretion grant a severance; however, "[s]everance is not granted as a matter of right, but only when the defendant would be prejudiced by a joint trial." *United States v. Long*, 705 F.2d 1259, 1262 (10th Cir.1983). To establish that a trial court abused its discretion in denying severance, a defendant must show that "actual prejudice" resulted from the decision. *United States v. McClure*, 734 F.2d 484, 487 (10th Cir.1984); *United States v. Long*, 705 F.2d at 1262–63; *United States v. Ready*, 574 F.2d 1009, 1015 (10th Cir.1978). We believe that Foreman did not make a sufficient showing of prejudice to support any of his contentions, and therefore conclude that the trial court did not abuse its discretion in denying severance.

To establish his first claim— that severance was required to obtain co-defendants' exculpatory testimony—Foreman had to " 'show that he would call the co-defendant at a severed trial, that the co-defendant would *in fact* testify, and that the testimony would be favorable to [him].' " (Emphasis added). *United States v. Dickey*, 736 F.2d 571, 590 (10th Cir.1984) (quoting *United States v. Vigil*, 561 F.2d 1316, 1317 (9th Cir.1977)), *cert. denied*, —— U.S. ——, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). Under the second requirement of this test, more than a bald assertion that a co-defendant will testify at a separate trial is required; " '[t]he unsupported possibility that such testimony might be forthcoming' " is considered insufficient to show prejudice. *United States v. Hackett*, 638 F.2d 1179, 1187 (9th Cir.1980), (quoting *United States v. Bumatay*, 480 F.2d 1012, 1013 (9th Cir.1973)), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). A defendant can not establish the willingness of a co-defendant to testify on his behalf if the co-defendant's offer is "further conditioned on the co-defendant's case being tried first." *United States v. Parodi*, 703 F.2d 768, 779 (4th Cir.1983). Furthermore, under the third requirement, the defendant must show that more than a " 'vague and conclusory' statement ... 'of ... negligible weight or probative value' " would be given to demonstrate a co-defendant's testimony would be "favorable". *Id.* at 780.

Here Foreman's attorney stated in his affidavit that he was informed by other counsel that two co-defendants had never seen or heard of Foreman before the arrest and would so testify if he were tried *after* them. I R. 216. Such testimony would be

---

**34.** Although the district court gave no reasons for its decision when it denied Foreman's severance motion (*see* I R. 175), Foreman relies on the following portion of the trial transcript to establish the grounds for the decision:

THE COURT: All right. Well, as to the motion for a severance, those will be denied, and in particular to the affidavits filed by the—by you, Mr. Boult on behalf of—you or Ms. Indri[t]z—on behalf of—of your—your client, the law from United States versus Parod[i], 703 F.2d 768[,] sets forth the test where a motion for severance is based and it has to be established that there is a bona fide need

for the testimony of the co-defendant, the likelihood that the co-defendant would testify at a second trial and waive his 5th amendment rights, and that the substance of the co-defendant has to be gone into and that the exculpatory nature and effect of such testimony.

And I feel that from the contents of the affidavits that you indicated, the fact that they would merely state that they had never seen Mr. Foreman before would be insufficient under the test set forth in Parod[i] for a severance.

(Tr. 7–8).

of doubtful weight or probative value in a conspiracy case such as this where knowledge of the other parties in the conspiracy is not required for conviction. *See United States v. Dickey*, 736 F.2d at 583. Foreman's attorney also merely asserted that the co-defendants told their lawyer they would testify at a separate trial, conditioning their offer to testify on their case being tried first. Such a conditional offer to testify was "in effect a simple alibi-swapping device.... [T]o grant a severance under such a condition 'would allow co-defendants to employ a motion for severance to obtain benefits they would not have but for their joint indictment.'" *United States v. Parodi*, 703 F.2d at 780 (citing *United States v. Frazier*, 394 F.2d 258, 261 (4th Cir.), *cert. denied*, 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (1968), and *United States v. Becker*, 585 F.2d 703, 706 (4th Cir.1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979)). Therefore, the district court did not abuse its discretion in denying severance on this ground.[35]

■ As to the claim that severance would have permitted Foreman's attorney, Mr. Boult, to recuperate from an injury, we are not persuaded that Foreman was prejudiced by the eight-day continuance ordered until his attorney could participate at trial. I R. 550–51. Foreman relies primarily on *United States v. Mardian*, 546 F.2d 973 (D.C.Cir.1976) (en banc), to support this argument for severance. We, however, believe that *Mardian* is not controlling here. There the court held that denial of severance was improper because appellant's attorney was unable to continue as counsel in the case after becoming ill during trial *and* because there was a disparity in the evidence against the appellant and his co-defendants. In contrast, Foreman's attorney,

Mr. Boult, did recuperate and was able to participate at trial as Foreman's counsel after the eight-day continuance ended; Foreman does not demonstrate that he was prejudiced by this delay in the trial. Also, as discussed below, this is *not* the case where a disparity in evidence requires reversal.

■ Finally, we have held that when sufficient evidence is presented to connect the defendant to the conspiracy charged, his argument that severance is required due to the overwhelming evidence against co-defendants is without merit. *United States v. Dickey*, 736 F.2d at 589–90; *United States v. Carter*, 613 F.2d 256, 260 (10th Cir.1979), *cert. denied*, 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 24 (1980). Separate trials are not required merely because severance might have offered the defendant a better chance for acquittal or have aided his attempt to cast blame on co-defendants. *United States v. McClure*, 734 F.2d at 488; *United States v. Calabrese*, 645 F.2d 1379, 1384–85 (10th Cir.), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).

In sum, we hold that the district court's denial of severance for Foreman was not an abuse of discretion.

## X

### FOREMAN'S EFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Defendant Foreman asserts that he was deprived of his Sixth Amendment right to effective assistance of counsel, arguing that the court substituted his prepared attorney, with whom he had established an attorney-client relationship, with unprepared counsel one day prior to a motions hearing and four days before trial. Fore-

---

**35.** Foreman also argued in his brief that severance was required to protect both his attorney's duty to comment upon the co-defendants' failure to testify and his co-defendants' conflicting right to remain silent during trial. Appellant's Brief-in-Chief 31. We rejected this argument in *United States v. McClure*, 734 F.2d at 490–91. In that case, we recognized that dictum in *DeLuna v. United States*, 308 F.2d 140 (5th Cir.1962), has been cited "on numerous occasions for the no-

tion that a defense attorney may ... be obligated to comment upon a codefendant's invocation of the fifth amendment, and that such an obligation requires severance." *United States v. McClure*, 734 F.2d at 490. However, we rejected the dictum, concluding that "under no circumstances can it be said that a defendant's attorney is obligated to comment upon a codefendant's failure to testify." *Id.* at 491.

man specifically says that (1) the court's interference "with the ability of counsel to make independent decisions about the conduct of the defense" justified a presumption of ineffectiveness; and (2) he was actually prejudiced by numerous errors committed by unprepared counsel during trial and by the fact that he was forced to act as co-counsel in his own defense. Appellant Foreman's Reply Brief 5–8.[36]

We first examine whether a presumption of ineffectiveness is justified here under *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); if we decide the circumstances surrounding Foreman's representation do not give rise to such a presumption, we will next determine whether Foreman's claim, based on the actual performance of counsel at trial, meets the standards enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In *Cronic*, the Supreme Court held that "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." 466 U.S. at ——, 104 S.Ct. at 2048. These circumstances must be "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* The Court

recognized a presumption of prejudice may be appropriate in a case where designation of counsel may be " 'either so indefinite or so close upon the trial to amount to a denial of effective' " assistance of counsel. *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). However, the Court also referred to cases where refusal to postpone a criminal trial because of late appointment of counsel did not give rise to such a presumption. *Id.* (citing *Avery v. Alabama*, 308 U.S. 444, 450–53, 60 S.Ct. 321, 323–25, 84 L.Ed. 377 (1940) (counsel appointed in a capital case only three days before trial could reasonably be expected to adequately prepare for trial, given that evidence and witnesses were easily accessible to him)).

We believe this case is more closely analogous to *Cronic* and *Avery* than to *Powell*. Foreman was arrested on March 27, 1983. Counsel was appointed from the Federal Public Defender's Office to represent him on March 30, 1983. I R. 39–40. For approximately two months, that counsel "devoted considerable time and effort to preparation of the case, by meeting with Mr. Foreman ..., meeting with co-defendants' counsel, reviewing evidence, and doing legal and factual preparation for trial." Appellant's Brief-in-Chief 2. Therefore we

---

**36.** Foreman also contends that under the Sixth Amendment and the Speedy Trial Act amendments of 1979, 18 U.S.C. § 3161(h)(8)(B)(iv), the district court should have granted his continuance motions of June 6 and June 13, 1983 to allow his original prepared attorney time to recover from an illness so that she could continue to represent him at trial; Foreman asserts that the continuances should have been granted to guarantee "continuity of counsel" and that the act of substituting unwanted other counsel over his objections violated his right to be free of government interference in his defense. Appellant's Brief-in-Chief 7–16.

We have held that "[t]he decision whether to grant a continuance is a matter for the sound discretion of the trial court and will not be disturbed absent a showing of abuse resulting in manifest injustice." *United States v. Wilks*, 629 F.2d 669, 673 (10th Cir.1980); *see also Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983); *United States v. McManaman*, 653 F.2d 458, 460 (10th Cir.1981). We have also recognized that "the expeditious han-

dling of a case may take precedence over a defendant's preference between co-counsel." *United States v. McManaman*, 653 F.2d at 461 (citing *Giacalone v. Lucas*, 445 F.2d 1238 (6th Cir.1971), *cert. denied*, 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972), and *Rolon Marxuach v. United States*, 398 F.2d 548 (1st Cir.), *cert. denied*, 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443 (1968)); *cf. Morris v. Slappy*, 461 U.S. at 13–14, 103 S.Ct. at 1617 (rejecting the claim that the Sixth Amendment guarantees a "meaningful relationship" between the accused and his counsel). We believe that these cases are applicable here because of the similarity between Foreman's "continuity of counsel" claim and the claim that defendant was denied the opportunity to be represented by counsel of his choice.

In light of the following discussion concerning the effectiveness of representation by the substitute attorney, Mr. Boult, we therefore conclude that the court did not abuse its discretion or violate the Sixth Amendment in denying the continuances here.

cannot say that four days was not sufficient time for substitute counsel from the Public Defender's Office to adequately prepare for trial; his work was simplified by the prior preparation, and he could consult with original counsel whenever questions arose. In addition, the case involved only one illegal transaction; the government's specific case against Foreman further consisted primarily of evidence obtained on his arrest. The basic defense for counsel to raise on these facts was that Foreman was not involved with his co-defendants in the operation. Considering these surrounding circumstances, we conclude that a presumption of ineffectiveness is not justified in this case.

We therefore must next examine counsel's actual performance at trial. We must apply *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to decide whether there was an actual breakdown of the adversarial process during trial. *See Cronic,* —— U.S. at —— n. 41, 104 S.Ct. at 2051 n. 41. Under *Strickland v. Washington,* the defendant must meet a two-part test. He must first show that counsel's performance was deficient or unreasonable considering all the circumstances. 466 U.S. at——, 104 S.Ct. at 2064.

> Judicial scrutiny of counsel's performance must be highly deferential.... Because of the difficulties inherent in mak-

ing the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* 466 U.S. at ——, 104 S.Ct. at 2065.

Second, the defendant must show that the deficient performance prejudiced the defense, or that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* 466 U.S. at ——, 104 S.Ct. at 2068. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.*

▇ Applying these standards, we conclude that the conduct of Foreman's counsel during trial was not unreasonable and that Foreman did not suffer any prejudice that would warrant setting aside his conviction. The specific errors Foreman claims his substitute attorney, committed at trial [37] do not rise to the level of unreasonableness required to overcome the strong presumption that counsel's performance was adequate. Counsel in fact demonstrated on numerous occasions effective representation of Foreman both during the pretrial motions hearing and at trial.[38]

---

**37.** Foreman asserts that his substitute attorney committed the following errors during trial: he conducted a disastrous cross-examination of a witness who, because of his open-ended questioning, referred to "prior record" information; he lost documents material to a cross-examination; he was unable to regularly confer with or consider suggestions of Foreman after receiving injuries in an accident; he only sporadically cross-examined witnesses to emphasize Foreman's non-involvement in the crimes charged; he did not prepare or interview all defense witnesses; he was unable to present an opening argument, thereby forcing Foreman to do so in his place.

**38.** At the motions hearing, Mr. Boult argued for a continuance based on his own lack of preparation and the illness of Foreman's original attorney. (IV R. 5–7; III R. 302); he effectively sought an extension in time to file further suppression motions (IV R. 9–10); he represented

Foreman's interests concerning the suppression of evidence many times throughout the hearing (IV R. 11–12, 22–25, 29; III R. 176–80, 284–89); and he presented an argument in support of Foreman's severance motion (III R. 294–95).

During trial, Mr. Boult cross-examined many of the government's witnesses in an attempt to point out that either no evidence existed to link Foreman to the crimes charged or no inference of guilt could be made from the evidence that was presented (Tr. 143–46; 163–64; 282–89; 304–06; 463–66; 570–76; 785–89; 916–26; 1040–53; 1123–24; 1180–87; 1311–18); he brought in his own witnesses to establish the veracity of Foreman's alibi that he traveled to Albuquerque to play pool, to vouch for Foreman's reputation and character, and to show that Foreman was not involved in the conspiracy during the months of February and March 1983 (Tr. 1444–54, 1470–76, 1486–94). Mr. Boult also effectively argued on behalf of Fore-

We hold that Foreman was not deprived of his Sixth Amendment right to effective assistance of counsel by the replacement of his original attorney four days before trial with counsel who vigorously represented him.

## XI.

### DENIS' WITNESS MISIDENTIFICATION CLAIM

Defendant Denis claims that the district court committed reversible error in refusing to correct before the jury the misleading and prejudicial testimony of a witness, Cynthia Ann Bernard, who mistakenly identified him in court as the person who rented the Ford Bronco found abandoned near the marijuana-ladened truck on March 27, 1983. He argues that Bernard should have identified co-defendant Hernandez because the rental agreement was drafted in the name of Hernandez, and bore the same signature as that shown in Hernandez' Florida driver's license and a prior rental agreement in Hernandez' name. Denis asserts that by allowing the false testimony to stand uncorrected before the jury, the court violated the Due Process Clause of the Fourteenth Amendment and unduly prejudiced his case. Individual Opening Brief of Appellants Denis and Carralero 17–23.

We have held in an analogous case, involving the failure to give requested cautionary instructions to the jury on the "possible infirmities" of witness testimony, that on appeal we will focus on the facts of each case to determine whether the instruction was required to fairly present the case to the jury. In particular, we will consider whether identification was the sole or primary issue in the case, whether the evidence consisted mainly of eyewitness identification testimony, and

whether that testimony was uncertain, qualified, or suggested a serious question whether the witnesses had an adequate opportunity to observe. *United States v. Thoma,* 713 F.2d 604, 608 (10th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 721, 79 L.Ed.2d 183 (1984).

■ In *Thoma,* identification was a critical issue. However, we concluded that no reversible error occurred because the government's case did not depend on a single eyewitness, the court instructed the jury that it must find beyond a reasonable doubt that the defendant committed the crimes as alleged, and defense counsel emphasized the discrepancies in the identification testimony. *Id.; see also United States v. Cueto,* 628 F.2d 1273, 1276 (10th Cir.1980) (no reversible error in refusing to give requested instruction on identification testimony because the government's case did not depend on a single eyewitness and there was corroborating evidence to support the testimony); *McGee v. United States,* 402 F.2d 434, 436 (10th Cir.1968) ("where the conclusiveness of identification has been challenged, it is incumbent upon the court to call attention to the fact that the jury must find beyond a reasonable doubt that it was the defendant on trial who had committed the acts as alleged"), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969).

We recognize that a serious question is raised as to whether Bernard adequately observed the renter of the vehicle; we also realize that her identification testimony was uncorroborated. However, identification was not a critical issue here. The government's case against Denis did not depend on Bernard's testimony, but rather on other independent evidence linking him to the conspiracy and the landing and unloading of the plane on the night of March 27, 1983.[39] In addition, defense counsel

man during closing argument by stressing the differences between Foreman and his co-defendants and the lack of incriminating evidence against Foreman. He pointed out innocent inferences to be drawn from the evidence, by arguing that the evidence at the most estab-

lished Foreman was a hired driver without knowledge of the illegal plan, by attacking the government's case, and by emphasizing Foreman's good character (Tr. 1627–42).

**39.** We discussed in detail the government's case against defendant Denis in Part I. We conclud-

pointed out the discrepancies in Bernard's testimony on cross-examination and in closing argument. (Tr. 1125–29, 1679–81). The court instructed the jury that the defendant was presumed innocent and that he could not be found guilty of the crimes charged absent proof of guilt beyond a reasonable doubt. (Tr. 1756–57). In its instructions on the weight to be given witness testimony, the court further ordered the jury to consider "the extent to which [the witness] has been supported or contradicted by other credible evidence;" it emphasized that "[a] witness may be discredited or impeached by contradictory evidence." (Tr. 1761).

We conclude that the court was not required to correct Bernard's testimony in order to fairly present the case to the jury.

## XII.

### CONCLUSION

No reversible error has been shown. Accordingly, the convictions and sentences of all of the defendants are

AFFIRMED.

### APPENDIX

The evidence concerning the suppression of evidence issue, treated in Part VIII of the opinion, was as follows:

**A. Severo Espinosa and Federico Atucha:** Defendants Espinosa and Atucha contend that no probable cause existed at the time of their arrests because the arresting officers only had "unspecific information" that a plane had landed with a suspected load of marijuana, that unidentified vehicles had been observed leaving the vicinity of the aircraft, and that a vehicle other than defendants' had turned and sped away upon approaching police. They emphasize that the officers had not discovered the truck containing the marijuana when they

were arrested. Appellants' Individual Opening Brief 16. We, however, reject this argument because we cannot conclude that the district court's findings concerning these two defendants were clearly erroneous. Although the trial judge did not address some of the specific particularities of defendants' case, a reasonable view of the evidence still supports the ruling.

At the time of defendants' arrests, police officers knew that a large plane had landed late at night in a secluded area after entering the United States illegally. They also knew that a group of vehicles met the plane, departed from the scene 45 minutes later, and were approaching their station without lights. Officers further knew that the lead vehicle in this group had turned around and sped away upon reaching their station. In their pursuit of this vehicle, they discovered another car, abandoned approximately one mile down the road, and defendants running from it. Knowledge of these facts may not have been sufficient to establish guilt; but, we believe that, under a reasonable view of the evidence, these facts and circumstances gave rise to more than mere suspicion on the part of the arresting officers.

Our conclusion is bolstered by a similar decision in *United States v. Rivera*, 486 F.Supp. 1025, 1027–28 (N.D.Tex.1980).* In that case, only vague descriptions had been given of the vehicles to be apprehended, and some of the vehicles were up to ten miles away before they were stopped. However, the court held that probable cause to arrest existed because the arrests occurred in predawn hours in a rural area, the vehicles were under constant surveillance after their departure from a farm where they allegedly obtained marijuana parcels, and testimony indicated that no other vehicles passed a checkpoint set up by an agent one mile from the farm. We therefore affirm the district court's ruling

ed, without Bernard's testimony, that the evidence was sufficient to support Denis' conviction on both the conspiracy and possession counts.

* This case was affirmed on other grounds, 654 F.2d 1048 (5th Cir.1981), and reversed on rehearing on other grounds, 684 F.2d 308 (5th Cir.1982). In both these cases, the Fifth Circuit did not address the issue of probable cause to arrest.

that probable cause existed to arrest defendants Espinosa and Atucha and hold that the evidence obtained as incident to their arrests was properly admitted at trial.

**B. Amado Larrazleta:** Defendant Larrazleta argues that no probable cause existed at the time of his arrest because police officers only had knowledge of the facts that defendants Espinosa and Atucha delineated above, had observed a van containing marijuana, and had discovered him standing outside his vehicle approximately six miles from the van. Appellant's Individual Opening Brief 12–13. We believe that the case against Larrazleta is stronger than the one against Espinosa and Atucha because of the additional police knowledge that marijuana was *in fact* involved in the operation. For the reasons given in upholding the district court's ruling as it pertained to defendant's Espinosa and Atucha, we accordingly hold that Larrazleta's arrest was based on probable cause and that the evidence seized upon his arrest was admissible at trial.

**C. Mario Hernandez and Leovigildo Nunez:** Defendants Hernandez and Nunez assert that no probable cause existed for their arrests 20 miles from the Austin ranch because the arresting officers had no information to connect them to the landing and unloading of the aircraft the preceding night. They contend that they were arrested merely because they were of Latin descent and had been picked up hitchhiking ten miles from the ranch. Individual Opening Brief of Appellant Nunez 16; Individual Opening Brief of Appellant Hernandez 12. We disagree.

Although the trial court failed to address the particular facts surrounding defendants' arrests in denying their motions to suppress, the evidence known to the arresting officers may still be reasonably viewed as establishing probable cause. The officer who arrested defendants knew that other people involved in the landing and unloading of the plane were still at large in the area. He was also aware that a large quantity of marijuana had been abandoned and that all, except one, of those arrested at the scene of the crime were of Cuban descent from Miami, Florida. IV R. 96–97. The officer's suspicions were thus properly aroused when defendants were stopped at a roadblock at 6:30 a.m. on the morning after the plane landed at the Austin ranch. IV R. 99.

Probable cause to arrest was created when police discovered that defendants had been picked up hitchhiking earlier that morning near the ranch on a road that carries little traffic (IV R. 98–99, 101); when officers observed that defendants were wearing layers of clothing (IV R. 102); when defendant Hernandez presented a Florida driver's license and defendant Nunez produced a draft card in the name of "Virgilio Morales" for identification purposes (IV R. 100, 103); and when defendants gave a dubious explanation for their presence in the area.**

This case is similar to *United States v. Allen*, 675 F.2d 1373, 1383 (9th Cir.1980), where the court held that probable cause existed to arrest a person for involvement in a drug conspiracy when he was discovered hitchhiking in an area where hitchhiking was rare, with wet and sandy clothes, and no explanation for his presence in the area. Accordingly, we similarly hold that the trial court did not err in finding that probable cause did exist for defendants' arrests and in denying their motions to suppress evidence obtained upon their arrests.

**D. Luis Santa Cruz:** Defendant Santa Cruz contends that no probable cause existed for his arrest in Albuquerque, New Mexico two days after the plane's landing at the Austin ranch. He argues that the police officer only knew at the time of his arrest that he was a Cuban jeweler from Miami, Florida, that he claimed to have been in Amarillo, Texas looking for customers on the night of March 27, 1983, and that he was wearing dirty, bulky clothing

---

** The arresting officer testified in the pretrial suppression hearing that he was troubled by defendants' explanation that they were traveling from Albuquerque to Dallas because the road they were picked up on was "out of their way." IV R. 101–02.

and had scratches on his arms. Appellant's Individual Opening Brief 17–19. Santa Cruz, therefore, claims that the court should have suppressed statements and evidence obtained after he was read his *Miranda* rights; this evidence consisted of (1) a statement he made that he had traveled to Albuquerque, New Mexico from Amarillo, Texas by bus, and (2) a one-way bus ticket seized from his pocket which indicated he had traveled instead from Moriarty, New Mexico to Albuquerque. *Id.* at 18, 20.

We believe that Santa Cruz presents a stronger case than the other defendants for challenging the court's finding of probable cause to arrest. However, we need not address this issue because we are convinced that under the "harmless constitutional error" rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), any error here was harmless beyond a reasonable doubt,*** given the overwhelming independent evidence of guilt which was presented at trial and the relatively insignificant impact of the allegedly erroneously admitted evidence. *Cf. Schneble v. Florida,* 405 U.S. 427, 430–32, 92 S.Ct. 1056, 1058–59, 31 L.Ed.2d 340 (1971); *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1968); *Bond v. Oklahoma,* 546 F.2d 1369, 1376–77 (10th Cir.1976).

> We have held that under *Chapman,*
>
> If there is not a reasonable possibility that the improperly admitted [evidence] contributed to the conviction, reversal is not required. The conviction may stand only if we conclude that the minds of an average jury would not have found the State's case significantly less persuasive, had the [evidence] been excluded. (Citations omitted).

*Bond v. Oklahoma,* 546 F.2d at 1376.

Here other strong circumstantial evidence was presented (e.g., the photograph of Santa Cruz and other defendants building a shed) to show that Santa Cruz participated with co-defendants in the construction of the shed on land quickly bought by a named co-defendant and one "Virgilio Morales", located approximately 30 miles from the landing site; that a cardholder containing Santa Cruz' business card was found beneath the seat of the police car in which co-defendant Larrazleta was riding after his arrest near the landing site on the night of March 27, 1983; that Santa Cruz, like other co-defendants, wore bulky clothing (usable for wear in the cold March night weather) and appeared dusty when arrested; that Santa Cruz hid his face when first spotted by police; that Santa Cruz rented a room in the same motel as co-defendant Hernandez and did not sleep in his room the night the plane landed at the Austin ranch; and that Santa Cruz did not have luggage or a jewelry sample case with him when he was questioned by police, despite his explanation before his arrest that he had been in Texas looking for jewelry customers on March 27, 1983. Given this overwhelming independent evidence tending to show guilt and the relatively insignificant impact of the evidence which was allegedly erroneously admitted, we are convinced that the average jury would not have found the government's case significantly less persuasive had the evidence in question here been suppressed by the court.

*** The Supreme Court has indicated that the *Chapman* harmless error standard is applicable to cases such as this involving claims that evidence was admitted in violation of the Fourth Amendment. *See Chambers v. Maroney,* 399 U.S. 42, 53, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970); *see also Whiteley v. Warden,* 401 U.S. 560, 569–70 n. 13, 91 S.Ct. 1031, 1037 n. 13, 28 L.Ed.2d 306 (1971); 3 W. LaFave & J. Israel, *Criminal Procedure* § 26.6, at 276 (1984).